UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JAC PRODUCTS, INC.,**<br><br>Plaintiff,<br><br>vs.<br><br>**YAKIMA PRODUCTS, INC.,**<br><br>Defendant. | 2:21-CV-10633-TGB-CI<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

The parties to this lawsuit are two companies that agreed to work together on developing and selling car accessories. Now one company, JAC Products, Inc. ("Plaintiff" or "JAC") is suing the other company, Yakima Products ("Defendant" or "Yakima") for allegedly violating their signed contract, called the Master Joint Development Agreement ("JDA"). That contract outlined the terms upon which they would work together to jointly develop and bring to market car accessories. An addendum to the contract describes at least three scenarios under which JAC would receive sales commission payments from Yakima. JAC is suing to recover commissions it alleges it is owed under the contract. Yakima has moved for summary judgment, arguing that it does not owe JAC any money because the language of the JDA contains a precondition

1

for payment of commissions, and that condition has not been met. In response, JAC contends that there are questions of fact that need to be decided to determine whether a condition precedent exists and whether it was waived. For the reasons that follow, Yakima's Motion for Summary Judgment will be **DENIED**.

## I. BACKGROUND

JAC and Yakima both develop and supply vehicle rack and cargo management equipment for automotive uses. ECF No. 11-1, PageID.75. In June 2016, the two entities signed the JDA, a contract which envisioned the joint development and commercialization of certain kinds of products. Pl.'s Ex. 1, ECF No. 12-2. A "Joint Development Product" is defined as "a product related to the Purpose of this Agreement resulting from the activities under this Agreement."

The process for "Commercialization of Joint Development Products" is discussed in Exhibit A, an addendum to the JDA. As connected to commercialization, or bringing products to market, the JDA envisions three Scenarios according to which Yakima would be obliged to pay commissions to JAC. The Complaint concerns the two Scenarios (A and B) that both include the following language:

> When JAC Products acts as the representation of Yakima and uses its influence and sales contact to gain selling position at the OEM, JAC will be entitled to a commission of 5% of the sales price of any part sold as defined in the Statement of Work.

*Id.* at PageID.163. A "Statement of Work" is defined as follows:

> For those projects in which the Parties agree to collaborate, the Parties will prepare a written Statement of Work. Each Statement of Work must be signed by both Parties to be effective and will be subject to the terms of this Agreement.

*Id.* at PageID.157. It is undisputed that no Statement of Work was ever signed by both parties, as envisioned by the JDA, while that agreement was in effect. ECF No. 11-1 PageID.76; ECF No. 12, PageID.138.

But nevertheless, between the years 2018-2020, Yakima did pay JAC commissions related to some sales that JAC facilitated.[1] JAC now asserts there are more sales it facilitated, but for which it was never paid commissions. When JAC eventually sought these "tail commissions for certain sales and the contracts subject to those commissions," it was rebuffed. Through a letter from its counsel dated October 20, 2020, Yakima noted the payments it had already made to JAC, but asserted that in fact JAC owed money to *Yakima*, and concluded by saying that the time period covered by the JDA had elapsed and that "JAC Products is not entitled to any further or additional payments." ECF No. 12-3,

---

[1] Somewhat predictably, the parties disagree about the nature of these payments. Defendant says they were for early "development efforts" that led to "some sales." ¶ 13, ECF No. 11-1, PageID.76; *see also* Martin Decl. ¶ 7, ECF No. 11-3, PageID.86. Plaintiff maintains that these payments were for work covered by the contract and therefore indicate a waiver of the Statement of Work condition in the JDA, to the extent that it was a requirement. ECF No. 12, PageID.145-147.

PageID.169. Yakima also indicated it was willing to forgive the balance it asserted JAC still owed as a final resolution to any dispute. *Id.*

This impasse led to the instant lawsuit, originally filed in Oakland County Circuit Court and properly removed to this Court. ECF No. 1. Plaintiff asserts claims of breach of contract and violation of the Michigan Sales Representative Act, arguing that it secured at least three contracts under the terms of the JDA for which Defendant has not paid the required 5% commission. *Id.* Defendant argues that the JDA requires a Statement of Work ("SOW") to be executed before any commission is to be paid; the lack of any SOWs means that JAC is not entitled to any payment under the commercialization Scenarios envisioned by the JDA. ECF No. 10.

In a status conference, Defendant expressed its intention to file an early Motion for Summary Judgment focused on this contract interpretation issue. ECF No. 11. The motion is fully briefed, and the Court will decide this matter without oral argument.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the

4

outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### III. ANALYSIS

Sitting in diversity, a federal court must apply the choice of law provisions of the forum state. Neither party contests that there is a valid forum selection clause in the JDA that indicates it is covered by Michigan law, and the Court has not identified any reasons that Michigan law would prohibit the application of this forum selection clause. Pl.'s Ex. 1, ECF No. 12-2, PageID.161. The Court must therefore apply Michigan principles of contract interpretation to determine whether Defendant's motion may be granted.

**A. Contract language**

When enforcing a contract, the Court's primary goal is "to determine the intent of the contracting parties." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). This must first be done by "read[ing] the agreement as a whole and attempt[ing] to apply the plain language of the contract itself." *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 667 (Mich. Ct. App. 2000). Only if "reasonable minds could disagree about the conclusions to be drawn" from the language of a contract should a Court attempt to interpret or construe the language on its own. *Id.* (quoting *Henderson v. State Farm Fire & Casualty Co.*, 596 N.W.2d 190, 193 (Mich. 1999)).

Here, the clause at issue in the JDA states that JAC "will be entitled" to receive commissions when it "acts as the representation of Yakima and uses its influence and sales contact to gain selling position

6

at the OEM." Pl.'s Ex. 1, ECF No. 12-2, PageID.163. It further states that such commission will be at the rate of 5%, and will be calculated upon "the sales price of any part sold as defined in the Statement of Work." *Id.* Plaintiff does not advance, and the Court does not find, any ambiguity or potential for multiple interpretations in this language. Therefore, the language can be enforced as written: commission payments are only available for a "part sold as defined in the Statement of Work."

Parties largely frame their arguments around whether the JDA contains a "condition precedent," but the Court finds it unnecessary to analyze the disputed terms using this framework.[2] In any scenario involving commission payments, there is a necessary first question that must be answered: upon what item or items will commission be paid? Here, the answer is "the sales price of any part sold as defined in the Statement of Work." The JDA unambiguously anticipates payments only for parts that are sold based on a definition laid out in a Statement of Work, a document that is also defined elsewhere in the agreement. Without any effective (i.e., signed) SOWs, on the face of the contract and as a matter of law JAC is not entitled to any commissions.

---

[2] A condition precedent "is a fact or event that the parties intend must take place before there is a right to performance." *Able Demolition v. Pontiac*, 739 N.W.2d 696, 700 (Mich. Ct. App. 2007) (quoting *Mikonczyk v. Detroit Newspapers, Inc.*, 605 N.W.2d 360, 362 (Mich. Ct. App. 1999)). Michigan courts do not find contractual language to constitute a condition precedent unless "the clear and unambiguous language . . . compels the conclusion" that parties intended it as such. *Id.*

## B. Waiver as a defense

While this ruling might seem to resolve the question in favor of Defendant, there is still the issue of whether, even if the contract does require a signed Statement of Work in order for a commission to be paid, the parties by their actions waived this requirement. A waiver is a "voluntary and intentional abandonment of a known right." *Quality Prod.*, 666 N.W.2d at 258. To show waiver, there must be evidence of "mutual assent" between the contracting parties to waive contractual rights. This can be demonstrated through "clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id.*

Here, JAC has presented an affidavit from Don Cline, Vice President of Sales and Operations at JAC, which states that even though no SOWs were ever executed per the definition in the JDA (meaning, no SOWs were ever signed), they were "exchanged electronically." ECF No. 12-4. This evidence raises a question of fact as to whether the parties' course of conduct may have allowed that when SOWs were prepared, exchanged, or reviewed, even if they were not eventually signed, Yakima would still pay JAC commissions under the agreement. Both parties provide documentation that commission payments were made on sales to three different OEMs (Mopar, Ford, and Nissan) even where no SOWs were signed. These commissions were made at the rate of 5%, and in

Yakima's own words, were paid in exchange for JAC's efforts in "arrang[ing] for purchases" and "mak[ing] an introduction." Letter, ECF No. 12-3, PageID.168-172. This is the commission payment rate and type of service contemplated by the JDA. This is evidence of affirmative conduct capable of showing an agreement to waive contractual rights. Such evidence raises a question of fact as to whether the parties mutually agreed to waive the necessity of executing an SOW before making commission payments. If this contractual provision was indeed waived, both of Plaintiff's claims become viable, making summary judgment for Defendant inappropriate at this stage.

## CONCLUSION

For all the reasons set out above, Defendant's Motion for Summary Judgment (ECF No. 12) is **DENIED**. The scheduling order as approved by the Court for this case remains in effect.[3]

**SO ORDERED** this 16th day of February, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

---

[3] The Court notes that Defendant's briefing appears to be in 12-pt font. Counsel may have been relying on an outdated version of the Court's Practice Guidelines; they are directed to the updated Guidelines and Local Rule 5.1(3)'s requirements for font size for any future filings.